_____



SO ORDERED,

**Judge Katharine M. Samson**
United States Bankruptcy Judge
Date Signed: September 24, 2020

The Order of the Court is set forth below. The docket reflects the date entered.
_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE:  GARY D. WALLS<br>          LAURA C. WALLS | CASE NO. 19-51191-KMS |
| DEBTORS | CHAPTER 7 |
| KIMBERLY R. LENTZ.,<br>as Chapter 7 Trustee for the Bankruptcy Estate of<br>Gary D. Walls & Laura C. Walls, Debtors | PLAINTIFF |
| V. | ADV. PROC. NO. 19-06038-KMS |
| NATIONAL DEBT RELIEF LLC | DEFENDANT |

### OPINION AND ORDER GRANTING IN PART AND
### DENYING IN PART JUDGMENT ON THE PLEADINGS
### AND DISMISSING CROA COUNT

Before the Court are the following two motions by Defendant National Debt Relief LLC ("NDR"): the Motion for Judgment on the Pleadings or to Compel Arbitration, ECF No. 6, with Response by Plaintiff chapter 7 trustee Kimberly R. Lentz ("the Trustee"), ECF No. 30; and the Motion to Dismiss CROA Claims, ECF No. 25, also with Response by the Trustee, ECF No. 35. The dispute centers on the prepetition participation by Debtor Laura C. Walls in what the Trustee describes as a "debt relief and credit repair program" offered by NDR ("Program"). Compl. ¶ 3, ECF No. 1. The Complaint alleges that Walls's participation in the Program made her financial

problems worse, not better, and that the money Walls paid NDR rightfully belongs to the bankruptcy estate.

The Complaint alleges three counts that are core under 28 U.S.C. § 157(b)(2)(A), (E), and (H) and one count that is non-core. The core counts are for turnover of records under 11 U.S.C. § 542(e), avoidance of fraudulent transfers under 11 U.S.C. § 548(a) with recovery under 11 U.S.C. § 550, and an accounting under 11 U.S.C. § 542(a). Compl. ¶¶ 47-60, ECF No. 1 at 8-9. The non-core count is under the Credit Repair Organizations Act (CROA), 15 U.S.C. §§ 1679-1679j, seeking damages or, in the alternative, rescission of Walls's contract with NDR. Compl. ¶¶ 61-81, ECF No. 1 at 10-14. Taken together, the motions seek a judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure ("Rules") on the bankruptcy counts; and as to the CROA count, either a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)[1] based on the Trustee's lack of standing, or if there is standing, either a judgment on the pleadings or an order compelling arbitration.

The CROA count is dismissed as moot. Consequently, the Court does not reach the question of standing raised in the Motion to Dismiss CROA Claims. As to the bankruptcy counts, judgment on the pleadings is granted in part and denied in part.

## I. Motion to Dismiss CROA Claims

NDR asserts that the Trustee does not have standing to bring the CROA count. Mot. ¶ 4, ECF No. 25 at 2. NDR also argues that standing—a question of subject matter jurisdiction—must be determined before the Court considers NDR's request for judgment on the pleadings on the CROA count or the request to compel arbitration. ECF No. 31 at 13 n.3, 21 n.6; *see Ramming v.*

---

[1] Rules 12(b) and (c) of the Federal Rules of Civil Procedure apply in adversary proceedings. Fed. R. Bankr. P. 7012(b).

*United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.").

NDR is correct that there is an issue of subject matter jurisdiction that must be addressed before all else. It is mootness. *See Sannon v. United States*, 631 F.2d 1247, 1250 (5th Cir. 1980) (citing *Ala. ex rel. Baxley v. Woody*, 473 F.2d 10, 12-13 (5th Cir. 1973) ("Striking at the very heart of federal subject matter jurisdiction, a mootness issue quite clearly can be raised sua sponte if not addressed by the parties." (footnote omitted)). The Trustee has agreed to arbitration of the CROA count. *See* Resp., ECF No. 30 at 8. Consequently, there is no longer any "case" or "controversy" about the arbitrability of the CROA count. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992) ("[The Constitution] limits the jurisdiction of federal courts to 'Cases' and 'Controversies'. . . ."). It follows that the request to compel arbitration has been rendered moot. *See Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) ("Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot.").

The arbitration provision in the contract that Walls signed with NDR ("Agreement") states that "[i]n the event of any controversy, claim, or dispute between the parties arising out of or relating to this Agreement, the parties agree to resolve *all issues* solely through the use of Binding Arbitration." Answer, Ex. A, ECF No. 5-1 at 5 (emphasis added). Because the Federal Arbitration Act applies to claims brought under CROA, the arbitration provision must be enforced according to its terms. *See CompuCredit v. Greenwood*, 565 U.S. 95, 103-04 (2012). The scope of "all issues" under the arbitration provision includes questions a court would decide under Rule 12(c). *See*

3

*Picard v. Credit Sols., Inc.*, 564 F.3d 1249, 1256 (11th Cir. 2009) ("Whereas the facts conclusively demonstrate that the appropriate forum for resolving this dispute is an arbitral forum, any other issues, such as whether CROA applies to [the defendant], are for the arbitrator"). Since the issues under Rule 12(c) are for the arbitrator, not the Court, the request for judgment on the pleadings is also moot as to the CROA count.

Because the parties agree that the CROA count is arbitrable and because the arbitration provision in the Agreement encompasses any issues NDR has raised under Rule 12(c) as to the CROA count, there is no longer any dispute before the Court about the CROA count at all. Accordingly, the CROA count must be dismissed as moot.

## II. Motion for Judgment on the Pleadings as to Bankruptcy Counts

### A. Standard Under Rule 12(c)

"The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). In construing the complaint, the court "accept[s] the complaint's well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff." *Id.* A complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim that is facially plausible supports a reasonable inference that the defendant is liable for the alleged misconduct, not merely the inference that the defendant might have engaged in misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" nor "'naked assertion[s]' devoid of 'further factual enhancement'" will do. *Id.* Generally, the court may consider only the contents of the pleadings, including attachments, and documents attached to

4

either a motion to dismiss or an opposition "when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). To the extent an attached contract conflicts with the allegations in the complaint, the contract controls. *Campbell v. DLJ Mortg. Cap., Inc.*, 628 F. App'x 232, 234 (5th Cir. 2015) (citing *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440-41 (5th Cir. 2015)).

### B. Facts Accepted as True

NDR is a "debt relief provider." Compl. ¶ 13. In December 2018, Debtor Laura Walls was struggling with debt and did not want to file for bankruptcy. *Id.* ¶ 36. After receiving a letter from NDR, Walls called NDR and reviewed her debts. *Id.* ¶ 37-38. The Program was explained to her, including that she would stop making payments to her creditors and instead pay NDR $373 per month. *Id.* ¶¶ 38, 41. NDR led Walls to believe that her debts could be resolved and that her credit rating would improve. *Id.* ¶ 40.

On December 5, 2018, Walls signed the Debt Negotiation Agreement ("Agreement"), which stated that NDR would provide "professional Debt Negotiation services . . . in an effort to effectuate reasonable settlement(s)" on Walls's behalf. Agreement, ECF No. 5-1 at 3. The Agreement required Walls to set up a dedicated savings account ("Account"), the sole purpose of which was to accumulate funds for debt settlement payments and NDR's fees. *Id.* at 3, 4. NDR would earn fees for services only when "a successful settlement is received on an enrolled debt, you [Walls] approve the terms of the settlement, and payment has been made towards that settlement." *Id.* at 3.

Walls could either contract with Global Client Solutions LLC ("Global") for this Account or use another account of her choosing. *Id.* at 3, 4. Walls set up the Account with Global. *See*

Global Dedicated Account Agreement & Application, ECF No. 5-2. Global would deduct from the Account the fees and charges that Walls was obligated to pay Global, which were limited to the fees and charges listed in the Dedicated Account Agreement and Application. ECF No. 5-2 at 2. Global explicitly was not responsible for any other fees or charges Walls might incur "in association with" the Program. *Id.* Walls agreed to deposit $186.50 into the Account biweekly. ECF No. 5-1 at 4.

Walls told NDR that she owed $20,920 in unsecured debt, all on credit cards. *See id.* at 9, 11. NDR required her to enroll all this debt in the Program. *Id.* at 4. The Agreement stated that because the dedicated account needed to accumulate enough money for NDR to make a good-faith settlement offer, it typically took 120 to 180 days before NDR could start contacting creditors to achieve a first settlement and that resolving all Walls's debts would take an estimated 42 months. *Id.* Walls could cancel the Agreement at any time for any reason, and all the funds in her Account would be returned to her "minus any fees due or scheduled to NDR for services rendered." *Id.* at 7. By about six months into the Program, NDR had not settled any of Walls's debts. At that point, Walls and her husband filed the underlying chapter 7 bankruptcy case, *In re Walls*, No. 19-51191-KMS (Bankr. S.D. Miss. filed June 20, 2019).

During her participation in the Program, Walls deposited $2424.50 into the Account and on June 24, 2019, was issued a refund of all except $141.65. Payment Sch. & ACH Refund, ECF No. 5-3. Of the $141.65 not refunded, $68.10 corresponds to fees and charges Global was authorized to deduct. *Compare* ECF No. 5-3 at 2, *with* ECF 5-2 at 5. But seven "Customer Fee" entries totaling $73.55 do not correspond to Global's fees and charges. The Customer Fees were charged between January 3, 2019, and June 3, 2019. ECF No. 5-3 at 2. Each Customer Fee entry

6

is notated "GLS (optional) - Call [NDR's phone number as shown on the Agreement] help/questions." *Id.*; *see* Agreement, ECF No. 5-1 at 3 (stating NDR's address and phone number).

### C. Conclusions of Law

### 1. Fraudulent Transfers

The Trustee alleges that Walls paid NDR approximately $2000 that the Trustee may avoid as fraudulent transfers under 11 U.S.C. § 548 and recover for the bankruptcy estate under 11 U.S.C. § 550. Compl. ¶¶ 3, 57. To survive NDR's motion under Rule 12(c), the Trustee must allege enough facts for a reasonable inference that (1) Walls transferred moneys to NDR; (2) on or within two years before the date of the filing of her bankruptcy petition; (3) received less than a reasonably equivalent value in exchange for the transfers; and (4) either was insolvent on the dates the transfers were made or became insolvent as a result of the transfers.[2] *See* 11 U.S.C. § 548(a)(1)(B)(i)-(ii)(I).

The facts support the reasonable inference that Walls transferred moneys to NDR, but only totaling $73.55, not $2424.50. According to the Payment Schedule, which the Trustee does not dispute, Walls made thirteen deposits of $186.50 each into the Account, for a total of $2424.50. Under applicable federal regulations, Walls owned the funds held in the Account. *See* Telemarketing Sales Rule, 16 C.F.R. § 310.4(a)(5)(ii)(B) (2016); 2 Stephanie W. Kanwit, *Fed. Trade Comm'n* § 20:14 (2020) ("The [Federal Trade Commission] amended the Telemarketing Sales Rule in 2010 to add specific provisions aimed at curbing deceptive and abusive practices

---

[2] Where, as here, the alleged fraudulent transfers are constructive, not actual, most courts do not apply the heightened pleading standard for fraud required under Rule 9(b). *Schott v. Massengale*, No. 18-759-JWD-RLB, 2019 WL 4741811, at *21 (M.D. La. Sept. 27, 2019) (quoting 5 *Collier on Bankruptcy* ¶ 548.11 (Richard Levin & Henry J. Sommer eds., 16th ed.)). The Fifth Circuit Court of Appeals has not ruled on whether the heightened pleading standard applies to constructive fraudulent transfer claims. *See Life Partners Creditors' Tr. v. Cowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 120-21 (5th Cir. 2019) (not reaching question because allegations under § 548(a)(1)(B) would satisfy both Rule 8(a) and Rule 9(b)). This Court applies the majority rule, requiring "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2) (made applicable in adversary proceedings by Fed. R. Bankr. P. 7008).

associated with debt relief services."). Under the same regulations, Global may not be "owned or controlled by, or in any way affiliated with" NDR. *See* 16 C.F.R. § 310.4(a)(5)(ii)(C).

Accordingly, for the $2282.85 that never left the Account and was ultimately refunded to Walls, the Trustee has not plausibly shown any transfer from Walls to either Global or NDR. Neither has the Trustee plausibly shown a transfer to NDR of the $68.10 in unrefunded Transaction Fees individually listed in the Payment Schedule in amounts corresponding to amounts Global was authorized to charge.

However, the same cannot be said about the $73.55 comprising seven unrefunded Customer Fee charges—one for $1.55 and the remaining six for $12.00 each—that do not correspond to amounts Global was authorized to charge. For every Transaction Fee, the Payment Schedule shows an apparently associated Customer Fee. The fact that each Customer Fee entry on the Payment Schedule includes a notation to call NDR's number for help or questions supports a reasonable inference that NDR is liable for fraudulent transfers—notwithstanding that the Agreement did not permit NDR to earn any fees for services until at least one settlement was reached and no settlements were reached on Walls's debts. Consequently, the Trustee has adequately pleaded that Walls transferred $73.55 to NDR.

The Trustee has also adequately pleaded the other elements under § 548(a)(1)(B). First, all the Customer Fees were charged within the six months leading up to Walls's bankruptcy, satisfying the requirement that the transfers occurred on or within two years before the date of the filing of the petition. Second, there is no indication on the Payment Schedule or anywhere else in the record that Walls received any services for the Customer Fees, satisfying the requirement that she received less than a reasonably equivalent value in exchange for the transfers. And third, Walls's bankruptcy schedules show that on the date of filing, her debts exceeded her assets, satisfying the

requirement that Walls was either insolvent on the dates the transfers were made or became insolvent as a result of the transfers. *See* No. 19-51191-KMS, ECF No. 3 at 1 (Official Form 106SUM summarizing assets and liabilities); 11 U.S.C. § 101(32) (defining "insolvent" to mean an entity's financial condition in which the sum of debts is greater than all the entity's property, exclusive of property fraudulently transferred or claimed as exempt under state or federal law); 11 U.S.C. § 101(15) (defining "entity" to include "person").

Judgment on the pleadings is therefore denied on the fraudulent transfers count.

### 2. Turnover of Records

Although the Trustee titled this count "Turnover of Estate Property," it requests that NDR be required to turn over not estate property but "any and all records . . . related to any and all aspects of the promised services" under 11 U.S.C. § 542(e). Compl. ¶ 52. "[T]he court may order an attorney, accountant, or other person that holds recorded information . . . relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee." 11 U.S.C. § 542(e). "[D]ocuments which are not property of the estate may still be subject to turnover under Section 542(e) if they relate to the debtor's property or financial affairs . . . ." *Faulkner v. Kornman (In re Heritage Org., L.L.C.*), 350 B.R. 733, 739 (Bankr. N.D. Tex. 2006).

NDR argues that Congress did not intend § 542(e) to apply to an entity like NDR. ECF No. 31 at 7-8. NDR cites, among other authorities, a United States Supreme Court opinion quoting Senate and House of Representatives reports that § 542(e) "is a new provision that deprives accountants and attorneys of the leverage that they ha[d] . . . under State law lien provisions, to receive payment in full ahead of other creditors when the information they hold is necessary to the administration of the estate." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 351 (1985) (quoting S. Rep. No. 95-989, at 84 (1978); H.R. Rep. No. 95-595, at 369-70 (1977), *as*

9

*reprinted in* 1978 U.S.C.C.A.N. 5787, 5870, 6325-26). But NDR extracts this quote from an opinion about attorney-client privilege. *Id.* at 348 ("Here, we face the . . . question of which corporate actors are empowered to waive the corporation's privilege."). The Court was not considering what "other person[s]" were included in § 542(e) besides attorneys and accountants.

"[T]he Supreme Court has stated repeatedly that where a statute's text is clear, courts should not resort to legislative history." *Adkins v. Silverman*, 899 F.3d 395, 403 (5th Cir. 2018) (citing *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004)). Here, the text is clear; besides attorneys and accountants, the statute says "or other person"—without limitation. And as the Supreme Court said in the case that NDR cited, the legislative history shows it was not Congress's intent to limit the trustee's ability to get information. *See Commodity Futures*, 471 U.S. at 351. Consequently, legislative history referring to accountants and attorneys does not exclude NDR from the scope of § 542(e).

The Trustee has adequately pleaded that any records of the services NDR provided Walls are records "relating to" her financial affairs under § 542(e). "[T]he phrase 'relating to the debtor's property or financial affairs' should be broadly interpreted . . . ." *In re Heritage Org.*, 350 B.R. at 740 (quoting § 542(e)). Even so, the Trustee does not have *carte blanche* to demand records beyond the purview of this adversary proceeding. Because the Trustee adequately pleaded only fraudulent transfers of $73.55 in Customer Fees, the "promised services," Compl. ¶ 52, to which the records must relate are any services NDR provided in exchange for the Customer Fees.

The Trustee also requests "records . . . related to any and all individuals in Mississippi for whom NDR performed or agreed to perform any aspect of the services." Compl. ¶ 52. As this Court has previously ruled, the Trustee is entitled only to records related to Walls's financial affairs. *See, e.g., Lentz v. Parkland Legal Grp. PL (In re Gaughf)*, No. 19-06031-KMS, ECF No.

10

35 at 2 (Bankr. S.D. Miss. Feb. 5, 2020); *Lentz v. Global Client Sols. LLC (In re Jackson)*, No. 19-06028-KMS, ECF No. 22 at 2 (Bankr. S.D. Miss. Nov. 12, 2019).

Accordingly, as to the request for records related to any individual other than Walls, judgment on the pleadings is granted. Judgment is otherwise denied on the count for turnover of records.

### 3. Accounting

Again under § 542, the Trustee seeks an accounting. Compl. § 59. Although the Complaint does not specify a subsection, the Trustee argues under § 542(a), the focus of which is turnover. With exceptions not relevant here, § 542(a) provides that

> an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease . . . or that the debtor may exempt . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). The accounting the Trustee seeks would reveal "the precise amount of money due from NDR to Walls" and would answer the following questions: (1) how much money NDR collected for services that either were not performed or were not adequately performed, (2) how much interest the Global account earned, and (3) how much money was distributed from the Global account. Compl. ¶ 60. As under § 542(e), the Trustee also seeks records related to "any and all aspects of the promised services, including . . . records relating to any and all individuals in Mississippi for whom NDR performed or agreed to perform any aspect of the services." *Id.*

But the questions the Trustee wants answered by an accounting have either already been answered by the pleadings or addressed in the Turnover of Records section of this Opinion and Order. Based on the Payment Schedule and ACH Refund attached to the Answer, the amount of money NDR collected, if any, for services that allegedly either were not performed or were not adequately performed is $73.55; no interest was earned on the money in the Account; and the

11

amount of money distributed from the Account was $141.65. As to records "relating to any and all aspects of the promised services," Compl. ¶ 60, that request is granted under § 542(e), excluding records for individuals other than Walls.

The motion for judgment on the pleadings is therefore granted on the count requesting an accounting.

## ORDER

The CROA count is **ORDERED DISMISSED** as moot. As to the bankruptcy counts, the Motion for Judgment on the Pleadings is **ORDERED DENIED** as to the fraudulent transfers count**; GRANTED IN PART AND DENIED IN PART** as to the count for turnover of records; and **GRANTED** as to the accounting count.

*##END##*