**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| **GARY D. WALLS & LAURA C. WALLS,** | **CASE NO. 19-51191-KMS** |
| Debtors. | **CHAPTER 7** |
| **KIMBERLY R. LENTZ, as Chapter 7 Trustee for
The Bankruptcy Estate of Gary D. Walls
& Laura C. Walls, Debtors** | **PLAINTIFF** |
| V. | **ADV. PROC. NO. 19-06038-KMS** |
| **NATIONAL DEBT RELIEF, LLC** | **DEFENDANT** |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

### I.   INTRODUCTION

Plaintiff/Trustee brought core and non-core claims against National Debt Relief, LLC ("NDR") based upon an alleged "debt relief and credit repair program" that Laura C. Walls (the "Debtor") took part in. NDR moved to dismiss all of her claims. *See* Docket No. 6 and 25. The Court found that the turnover and fraudulent transfer claims were "adequately pleaded [only to the extent] that [Debtor] transferred $73.35 to NDR." *See* Docket No. 37 at 8 & 10. Because there are no genuine issues of material fact relating to those remaining claims, NDR is entitled to judgment as a matter of law. Accordingly, this adversary proceeding should be

44357551 v1

fully dismissed with prejudice in its entirety. *See* Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056; Local Rule 7056-1.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In December 2018, Debtor "was struggling with debt." *See* Docket No. 1 at 7 (¶36). Around that time she received a written offer from NDR to participate in its "debt-resolution program." *See* Docket No. 1-1 at 2. The notice informed Debtor that she had to pay "no upfront fees and owe[d] nothing to [NDR] until [her] debt[s] [were] resolved." *See* Docket No. 1-1 at 3. The "Client Success Kit" notified Debtor that the program would utilize a "dedicated savings account" to hold monthly program payments, but that the account was hers and she had "complete access and control over the funds it contain[ed]." *See* Docket No. 1-3 at 14 & 21.

On December 5, 2019, Debtor executed a Debt Negotiation Agreement ("DNA") with NDR. *See* Exhibit "A." She enrolled the five unsecured debts in the program. *See* Exhibit "A" at 10. The DNA provided:

> **1. Our Commitment to You:** NDR will not earn any fees for services until: a successful settlement is received on an enrolled debt, you approve the terms of the settlement, and payment has been made towards that settlement.
>
> . . .
>
> **2. Debt Negotiation Services:**
>
> b. <u>The Client's Responsibilities</u>:
>
> . . .

> V. The Client agrees to make timely deposits into their Dedicated Savings Account.
>
> . . .
>
> e. <u>Dedicated Savings Account</u>: You agree to establish a savings plan for the purpose of accumulating funds in order for NDR to negotiate down and settle the outstanding balances on the accounts enrolled in our debt negotiation program. You agree to save such funds in a separate, FDIC insured Dedicated Savings Account through Global Client Solutions, LLC ("Global"), or another account of your choosing. You shall promptly notify NDR of the selection and shall be responsible for reporting balances to NDR. <u>You shall retain full control, ownership, and all rights over your Dedicated Savings Account</u>, and will at all times be solely responsible for any payments or distributions due thereunder.
>
> . . .
>
> **6. Fees:** NDR will not charge any fee for settlements rendered until an enrolled debt is successfully resolved, the Client approves the terms of the settlement offer, and payment has been made towards the negotiated balance.
>
> . . .

*See* Exhibit "A" at 2-3.

At the same time, Debtor executed a Dedicated Account Agreement and Application ("DAA") with Global Client Solutions, LLC ("Global"). *See* Exhibit "B" at 2. Her dedicated account was assigned number *****1184 ("Account 1184"). *See* Exhibit "B" at 2. The DAA provided, *inter alia*:

> **Dedicated Account Agreement and Application**
>
> **II.    Purpose, Nature and Use of the Account:** Your Account is a dedicated account that you can use in connection with the debt settlement program you have undertaken....Your Account is a Federal Deposit Insurance Corporation ("FDIC") insured sub-

> account within a master custodial account maintained at a bank designated or selected by Global.
>
> . . .
>
> **VII.    Termination of Agreement / Account Closure:** You may terminate this Agreement and close your Account at any time by sending a written notice to Global's Customer Support....If this Agreement is terminated for any reason, the collected balance in your Account will be sent to you by check within a reasonable period of time.
>
> . . .
>
> **IX.    Non-Interest Account:** Your Account is a non-interest bearing Account.
>
> . . .
>
> Account Ownership, Control and Use:  I understand that the Account, when established in accordance with this Agreement, will be my sole and exclusive property; that only I (or authorized contact, if any) may authorize deposits to and creditor payments from my Account.

*See* Exhibit "B."  Pursuant to the DAA, Global received a one-time set-up fee of $9.00 for Account 1184. *See* Exhibit "B" at 3.  Global also received monthly service charges in the amount of $9.85, for January, February, March, April, May and June 2019.  *See* Exhibit "B" at 3.  The total disbursements to Global from Account 1184 were $68.10. *See* Exhibit "B" at 3.

On December 10, 2019, Debtor also executed a Client Retainer Agreement ("CRA") with Robert S. Gitmeid & Associates, PLLC ("Gitmeid"). *See* Exhibit "C" at 1-2. The CRA provided Debtor with legal services related to the debts she enrolled in the DNA. *See* Exhibit "C" at 1-2. The legal fees Debtor agreed to pay Gitmeid

44357551 v1                                             4

were also paid through Account 1184. *See* Exhibit "C" at 1-2. The following disbursements were made by Global to Gitmeid from Account 1184 based upon the CRA:

| Post Date | Description | Type | Amount | Running Balance |
|---|---|---|---|---|
| 1/3/2019 | GLS (optional) – Call 888-660-7427 help/questions - 12/28/18 | Customer Fee | ($1.55) | $166.10 |
| 1/3/2019 | GLS (optional) – Call 888-660-7427 help/questions - 01/01/19 | Customer Fee | ($12.00) | $154.10 |
| 2/1/2019 | GLS (optional) – Call 888-660-7427 help/questions - 02/01/19 | Customer Fee | ($12.00) | $505.25 |
| 3/4/2019 | GLS (optional) – Call 888-660-7427 help/questions - 03/01/19 | Customer Fee | ($12.00) | $856.40 |
| 4/2/2019 | GLS (optional) – Call 888-660-7427 help/questions - 04/01/19 | Customer Fee | ($12.00) | $1,207.55 |
| 5/2/2019 | GLS (optional) – Call 888-660-7427 help/questions - 05/01/19 | Customer Fee | ($12.00) | $1,558.70 |
| 6/3/2019 | GLS (optional) – Call 888-660-7427 help/questions - 06/01/19 | Customer Fee | ($12.00) | $1,909.85 |

*See* Exhibit "C" at 2 (¶ 4). Those disbursements reflect the monthly and pro-rated legal fees Walls agreed to pay Gitmeid pursuant to the CRA. *See* Exhibit "C" at 2 (¶ 4). The total disbursements to Gitmeid from Account 1184 were $73.55. *See* Exhibit "C" at 2 (¶ 4).

After participating in NDR's debt-resolution program for several months but before any settlements with her creditor were reached and approved, Debtor and her husband filed a voluntary Chapter 7 petition on June 20, 2019. *See* Case No. 19-51191. As a result of the Chapter 7 petition, Global returned the balance of Account 1184 to Debtor by ACH, in the amount of $2,282.85. *See* Exhibit "B" at 3 (¶ 8). No disbursements were ever made by Global to NDR from Account 1184 because, as Trustee admits, none of Debtor's obligations were ever "resolve[d]." *See* Exhibit "B" at 3 (¶ 9) ; Docket No. 1 at 1 (¶ 5).

44357551 v1                                5

Trustee filed this adversary proceeding on September 12, 2019. *See* Docket No. 1. She alleged that Debtor had participated in a "debt relief and credit repair program" offered by NDR, and that "approximately $2,000.00 in fees" had been paid to it. *See* Docket No. 1 at 1 (¶¶ 3-4). The Complaint raised claims for turnover of the estate's property (Count I), fraudulent transfers (Count II), accounting (Count III), and violations of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679, *et seq.* (Count IV). *See* Docket No. 1 at 8-13. Trustee demanded, *inter alia*, actual and punitive damages, attorney's fees, interest, equitable relief and rescission. *See* Docket No. 1 at 13-14 (¶83).

In response, NDR filed a Motion for Judgment on the Pleading or to Compel Arbitration and a Motion to Dismiss CROA Claims. *See* Docket Nos. 6 and 25. On September 24, 2020, the Court entered an Opinion relating to those motions. *See* Docket No. 37. It dismissed the CROA claim finding that it had become moot due to Trustee's agreement to arbitrate. *See* Docket No. 37 at 2-4. After analyzing Trustee's fraudulent transfer and turnover claims, the Court found that she has only "adequately pleaded that [Debtor] transferred $73.55 to NDR." *See* Docket No. 37 at 8. The Court also dismissed the accounting claim. *See* Docket No. 37 at 12. Because there are no genuine issues of material fact as to the remaining fraudulent transfer and turnover claims, summary judgment should now be entered in favor of NDR on those claims.

### III. STANDARD OF REVIEW AND STATEMENT OF PRIMA FACIE CASE

Summary judgment should be entered when there are no genuine issues of material fact and the movant is entitled to judgment was a matter of law. *See* Fed.R.Civ.P.56; Fed.R.Bankr.P.7056. "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under the law. An issue is 'genuine' if the evidence is sufficient for a reasonable fact-finder to return a verdict for the non-moving party." *See Kappa Development & General Contracting, Inc. v. Hanover Insurance Company.* (*In re Kappa Development & General Contracting, Inc.*), 2019 WL 2867110, at *4 (Bankr. S.D. July 2, 2019) (citations, internal quotation marks and brackets omitted); *Lefoldt v. Patel (In re S & P Enterprises, LLC),* 2017 WL 113604, at *2 (Bankr. S.D. Miss. Jan. 4, 2017).

"The moving party bears the initial responsibility of informing the court of the basis for its motion and the parts of the record that indicate the absence of a genuine issue of material fact." *See Kappa Development*, 2019 WL 2867110, at *4 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "Once the moving party presents the … court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." *Id.* (citation and internal quotation marks omitted). "But the nonmovant must meet its burden with more than metaphysical doubt, conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence." *Id*.

To establish a fraudulent transfer claim, Trustee must prove:

> (1) the debtor transferred property to the defendant;
> (2) the transfer occurred within two years of the filing of the petition;
> (3) the debtor was insolvent on the date of the transfer or became insolvent as a result of the transfer; and
> (4) the debtor received less that reasonable equivalent value in exchange for the transfer.

*See* 11 U.S. C. § 548 (a)(1); *In re GWI PCS 1, Inc.,* 230 F.3d 788, 807 (5th Cir. 2000); Docket No. 37 at 7. Trustee cannot establish any of the elements of her prima facie case for fraudulent transfer because no evidence exists to support the existence of those facts. Rather, the pleadings and the undisputed evidence actually refutes those necessary elements. *See* Docket Nos. 1 & 5; Exhibits B & C.

Similarly, in order to prevail on her turnover claim, Trustee must prove:

> (1) during the case;
> (2) an entity other than a custodian;
> (3) was in possession, custody or control;
> (4) of property that the trustee could use, sell or lease; and
> (5) that such property is not of inconsequential value or benefit to the estate.

*See In re Noram Resources, Inc.,* 2015 WL 2265405, at *6 (Bankr. S.D. Tex. May 11, 2015). Again, Trustee cannot establish any of the elements for a prima facie turnover claim because there is no evidence to establish those facts. The undisputed evidence actually confirms those facts do not exist. *See, e.g.,* Exhibits "B" & "C."

## IV. ARGUMENT

### A. Fraudulent Transfer Claims.

Trustee contends that Debtor "transferred substantial sums of her money" to NDR while she was insolvent, but failed to receive "reasonable equivalent value" in exchange. *See* Docket No. 1 at 9 (¶¶54-55). Her putative claim is both factually and legally defective.

Section 548 allows a trustee to avoid certain transfers. *See* 11 U.S.C. § 548. In addition to actual fraud, it permits constructive fraudulent transfers under § 548(a)(1)(B) to be set aside:

> The trustee may avoid any transfer ... of an interest of the debtor in property ... that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer ...; and
>
> (ii)(I) was insolvent on the date that such transfer was made ..., or became insolvent as a result of such transfer ... [.]

*See In re Life Partners Holdings, Inc.,* 926 F.3d 103, 120 (5th Cir. 2019); *Martin*, 2017 WL 6803550, at *4. However, the property transferred can only be recovered from an actual "transferee" of the debtor's property. *See* 11 U.S.C. § 550(a). Such a "transferee" must have "dominion and control over the funds" of the debtor, including "the right to put the money to [its] own use." *See Security First National*

*Bank v. Brunson, (In re Coutee)*, 984 F.2d 138, 141 (5th Cir. 1993); *Whitlock v. Lowe*, 569 B.R. 94, 100 (W.D. Tex. 2017).

The undisputed evidence confirms that NDR never had any estate property. *See* Docket No. 1-3 at 14; Docket No. 5-2; Exhibit "B" at 3 (¶ 9). Rather, Trustee's admissions and undisputed evidence confirms that none of Debtor's property was "transferred" to NDR and that it was not a "transferee." *See* 11 U.S.C. §§ 548 & 550. The payments made by Debtor during the course of her debt settlement program were deposited into her "dedicated savings account" with Global, not made to NDR. *See* Docket No. 1-3 at 14; Docket No. 5-2; Exhibit "B" at 2 (¶ 5). Those funds remained Debtor's "sole and exclusive property" unless and until she approved settlements with her creditors. *See* Exhibit "B" at 2 (¶ 3); Docket No. 1-3 at 21. Only after "a settlement [was] reached AND approved by [Debtor]" could NDR earn a fee. *See* Docket No. 1-3 at 14; Exhibit "A" at 3. But Trustee concedes that none of Debtor's obligations were ever "resolve[d]" and therefore NDR never earned a fee. *See* Docket No. 1 at 1; Exhibit "B" at 2 (¶ 5). Global has also confirmed that no funds were ever paid to NDR from Debtor's dedicated account. *See* Exhibit "B" at 3 (¶ 9). NDR, therefore, never had "dominion and control" over Debtor's property. *See Coutee*, 984 F.2d at 141. Because it never had "dominion and control" over any property, Debtor was not due "reasonable equivalent" value

and could not have been rendered "insolvent" by the non-transfer. *See* 11 U.S.C. § 548(a)(1)(B). Thus, the fraudulent transfer claim is meritless.

### B.  Turnover Claims.

Trustee argues that Debtor paid "approximately $2,000.00" to NDR for "certain debt relief and credit repair services," but that NDR never "provided the promised services." *See* Docket No. 1 at 8 (¶¶ 49-51). These naked allegations are patently false and refuted by the undisputed evidence. *Compare* Docket No. 1 at 8 *with* Docket No. 1-1 at 3; Exhibits "B" & "C."

"Section 542 empowers a trustee to bring property of the debtor into the bankruptcy estate when the debtor did not have possession of that property at the time the case was commenced." *See Henderson v. Legal Helpers Debt Resolution, LLC (In re Huffman)*, 2013 WL 2481529, at *7 (Bankr. S.D. Miss. June 10, 2013) (hereinafter *Huffman I*). Such an obligation to the estate, however, must be "matured, payable on demand, or payable on order." *See* 11 U.S.C. § 542(b). Therefore, a "disputed" or "unliquidated" obligation cannot be resolved through a turnover claim. *See Spach v. Johnina, Inc.*, 291 F.2d 619, 620 (5th Cir. 1961); *In re Julien Co.*, 128 B.R. 987, 993 (Bankr. W.D. Tenn. 1991).

While Trustee made the conclusory assertion that Debtor "paid fees and expenses to NDR" of "approximately $2,000.00," the Court previously held the turnover claim was only adequately plead as to "$73.55 in Customer Fees." *See*

44357551 v1                                       11

Docket No. 1 at 1; Docket No. 37 at 10. Debtor made monthly payments to a "dedicated savings account" she established with Global, not NDR. *See* Docket No. 1-3 at 14; Docket No. 5-2; Exhibit "B" at 2 (¶ 5). These third-party "dedicated savings accounts" are a "key feature" of any debt settlement program.[1] *See Henderson v. Legal Helpers Debt Resolution, LLC (In re Huffman)*, 505 B.R. 726, 738 (Bankr. S.D. Miss. 2014) (hereinafter *Huffman II*).

The funds in her dedicated account were the "sole and exclusive property" of Debtor, and she was free to "terminate" the account "at any time." *See* Docket No. 5-2 at 2 & 5; Exhibit "B" at 2 (¶ 3). Conversely, NDR could only earn a fee for its services when "an enrolled debt [was] successfully resolved" and the Debtor expressly "approve[d] the terms of the settlement offer" with the creditor under both the DNA and the TSR. *See* Docket No. 5-1 at 4; 16 C.F.R. § 310.4(a)(5). However, Trustee admits that none of Debtor's obligations were ever "resolve[d]." *See* Docket No. 1 at 1. Thus, no fees were ever paid by Global to NDR from Account 1184. *See* Exhibit "B" at 3 (¶ 9). Only Global and Gitmeid received any fees from Account 1184, and the balance of the account was also returned to Debtor by Global after the petition was filed. *See* Exhibit "B" at 3; Exhibit "C" at 2 (¶ 4).

---

[1] Such accounts are expressly authorized under the Telemarketing Sales Rule ("TSR"). *See* 16 C.F.R. § 310.4(a)(5)(ii). The TSR also prohibits dedicated account administrators from being "owned or controlled by, or in any way affiliated with" the debt settlement provider. *See* 16 C.F.R. § 310.4(a)(5)(ii)(c).

NDR has never had "possession, custody or control" of any estate property, either before, during or after the commencement of the Chapter 7. *See Noram Resources,* 2015 WL 2265405, at *6. Because it never had any such property there is nothing held by NDR now that Trustee could use or that the estate is entitled to "benefit" from. *Id.* Likewise, because the "Customer Fees" were actually paid to Gitmeid, *see* Exhibit "C" at 2, NDR has no "records . . . relate[d] [to] . . . any services [it] provided in exchange for the Customer Fees." *See* Docket No. 37 at 10. Thus, the turnover claim has no legal or factual basis.

## V.  CONCLUSION

All of Trustee's remaining claims rest upon a flawed and baseless factual premise – that Debtor paid and NDR received "approximately $2,000.00 in fees." *See* Docket No. 1 at 1 (¶ 3). The pleadings, the Court's prior Opinion, and the undisputed evidence, however, confirm that her naked allegation is false and that none of Debtor's property was ever transferred to NDR. *See* Docket No. 1 at 1 (¶ 3); Exhibit "B" at 3 (¶ 9). Accordingly, summary judgment dismissing all of Trustee's remaining claims with prejudice should be entered in favor of NDR. *See* Fed.R.Civ.P. 56.

Respectfully submitted, the 9th day of November, 2020.

*National Debt Relief, LLC*

*/s/ Mark H. Tyson*
Mark H. Tyson (MS Bar #9893)

**OF COUNSEL:**

BURR & FORMAN, LLP
The Pinnacle at Jackson Place
190 East Capitol Street, Suite M-100
Jackson, Mississippi  39201
Telephone: (601) 355-3434
Facsimile: (601) 355-5150
mtyson@burr.com

# **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document has been served on the following by Notice of Electronic Filing on this, the 9th day November, 2020:

Jason Graeber, Esq.
Graeber Law Firm, PLLC
2496 Pass Rd.
Biloxi, MS  39531
jason@jasongraeberlaw.com


Chadwick M. Welch
Watson Heidelberg PLLC
2829 Lakeland Drive, Suite 1502
Flowood, MS 39232
cwelch@whjpllc.com


*/s/ Mark H. Tyson*
OF COUNSEL